UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF NEW YORK
_____

PATRICK FLINT,

       Plaintiff,     09-CV-6083

   v.          **DECISION
             and ORDER**
TUCKER PRINTERS, INC.,
A Divisions of Consolidated Graphics, Inc.,

       Defendant.
_____

## **INTRODUCTION**

  Plaintiff, Patrick Flint ("Flint" or "Plaintiff"), brings this action pursuant to Title VII of the Civil Rights Act of 1964 ("Title VII"), 42 U.S.C. §§ 2000 et seq., the New York State Human Rights Law ("NYSHRL"), and the Age Discrimination in Employment Act ("ADEA"), 29 U.S.C. §§ 621 et seq., alleging retaliation for engaging in a protected activity and employment discrimination on the basis of his age by his former employer, Tucker Printers, Inc. ("Tucker" or "Defendant"). See Compl. at 1. Specifically, Flint alleges that he was terminated from his position as a production manager at Tucker following a complaint he made to management and that his duties as production manager were subsequently assumed by younger individuals. See Compl. at 3-6.

  Defendant denies Plaintiff's allegations and moves for summary judgment pursuant to Rule 56 of the Federal Rules of Civil Procedure ("Rule 56") on the grounds that Plaintiff has not stated

a prima facie case for retaliation or age discrimination. See Def. Mem. of Law at 7, 18.  Tucker contends that Plaintiff did not engage in a protected activity under Title VII, there is no causal relationship between Plaintiff's complaint to management and his subsequent termination, and that Tucker had a legitimate, non-retaliatory reason for terminating his employment. Further, Tucker contends that Flint's position as production manager was assumed by an individual three years older than Flint. Flint opposes Defendant's motion for summary judgment, arguing that there are genuine issues of material fact.  For the reasons set forth below, this Court grants defendant's motion for summary judgement and Plaintiff's Complaint is dismissed with prejudice.

## BACKGROUND

Flint was born on January 1, 1962 and began working for Tucker, a commercial printing business located in Henrietta, New York, in 1985 as a feeder/tender. See Pl. Resp. to Def. Statement of Material Facts (hereinafter "Responding Statement") at 1. Flint became lead pressman in 1987 and continued in that position until September 2007, when he was promoted to production manager. Id. at 2-3. Flint was promoted because of his tenure with the company and his skill and knowledge of the press machines. See Reynolds Aff. at 2. As production manager, Flint was responsible for the production of print jobs and overseeing the bindery, shipping and receiving departments and he reported directly to Craig Reynolds, President

of Tucker ("Reynolds"). See Responding Statement at 2-3. It is uncontested that Flint's duties included "ensuring the most efficient utilization of equipment, managing delivery priorities, quality control, inventory control, keeping relevant personnel informed of the status and progress of print jobs, directing plant personnel in their assigned roles to ensure the accomplishment of production objectives, and assuring the proper maintenance of manufacturing machinery." Id. at 3; See also Reynolds Aff. at 2.

Following his promotion to production manager, Reynolds testified that he began to notice deficiencies in the areas for which Plaintiff was responsible. See Reynolds Aff. at 2. For example, Reynolds stated in his affidavit that he held a managers meeting on December 18, 2007, at which he noted quality control issues, inventory problems, shipping errors, inefficient work flow, poor production performance and high temporary labor costs. Id. at 2-3. Additionally, Reynolds stated that Plaintiff used profanity during an earlier meeting held by the Plaintiff with the employees under his supervision. Id. at 3; See also Responding Statement at 5-6. Reynolds testified that he advised Plaintiff to refrain from speaking to his subordinates in such a manner. See Reynold's Aff. at 3. According to Reynolds, Plaintiff's performance did not improve and on February 13, 2008 he met with Plaintiff to discuss several areas of concern, including, *inter alia*, the tardiness of

Plaintiff's employees, temporary labor costs and press production problems. Id. at 3-4.

Later, in March 2003, another employee reported to Reynolds that Plaintiff yelled at the him and used profanity. Id. at 4. On this occasion, the employee complained that Plaintiff had cursed at him and, when he requested time off to determine whether he wanted to continue working "in such an abusive environment," Plaintiff responded, "You want to go? Go fucking now!" See Responding Statement at 10; See also Pl. Dep. at 71. Thereafter, on March 11, 2008, Plaintiff was terminated by Reynolds.

Plaintiff concedes that he used profanity, but he contends that his performance was exemplary throughout his tenure at Tucker. See Responding Statement at 6-8. He further claims that Reynolds did not inform him that his job performance or his use of profanity in the workplace were unacceptable. Id. Plaintiff offers the affidavit of a fellow employee, James Backus, who states that he believed Plaintiff was doing a good job, and that he does not remember Reynolds blaming Plaintiff personally for the issues presented in the December 2007 meeting, which Backus attended. See Backus Aff. at 1-2. Further, Backus states that the use of profanity was commonplace at Tucker. Id.

Prior to Plaintiff's termination, Plaintiff had dispute with Don Moroni, Tucker's customer service manager ("Moroni"). To document this dispute, Plaintiff sent an internal memorandum to

Reynolds, Steve Wallenbach (Group Vice President for Tucker's parent company, Consolidated Graphics, Inc.,) and Kathleen Anglin (Vice President of Compensation and Benefits at Consolidated Graphics). See Reynolds Aff. at 5; Pl. Dep. at 102-4. The memorandum states, "[t]his is to serve as documentation to a formal complaint that I am now filing for deformation [sic] of character and harassment against Don Moroni." Pl. Dep. at 104. Plaintiff testified that the complaint related to an incident whereby Don Moroni asked a female employee, Jennifer Bodine, whether she felt Plaintiff was harassing her, after Moroni witnessed Plaintiff touching Ms. Bodine's hair at work. Id. at 106-9. Ms. Bodine denied that Plaintiff harassed her at work. Id. Plaintiff states in the memorandum, "Don Moroni has made false accusations towards me and has put my reputation at risk." Id. at 110.

Plaintiff testified that he had been "harassed" by Moroni, but that he was not discriminated against because of his gender and he was not the subject of sexual harassment at work. Id. at 114-115. Plaintiff admits in his Responding Statement that this internal memorandum "does not allege that Moroni took any action against the Plaintiff because of his sex, nor does it allege any facts that can be construed as a complaint opposing alleged unlawful discrimination under Title VII or the NYSHRL." See Responding Statement at 18.

Tucker determined that Plaintiff did not violate the internal sexual harassment policy, and Reynolds suggested to Moroni that he apologize to Plaintiff. See Reynolds Aff. at 5. Moroni later apologized, but Plaintiff demanded a written apology and sent a follow up letter to Michael Barton (Executive Vice President of Human Resources for Consolidated Graphics, Inc.) demanding the same. Id. Tucker and its parent company determined that a written apology was not necessary, and the investigation into the complaint was closed in late February 2008. Id.

Following Plaintiff's termination, Craig Brothers assumed Plaintiff's position as production manager. Id. at 6. Craig Brothers is approximately three years older than Plaintiff. Id. Plaintiff contends that some of his former duties were assigned to a younger individual, Tina Hui, however Ms. Hui was a management trainee who merely rotated through Tucker's shipping and press departments. See Hui Aff. at 2-3. Ms. Hui did not assume Plaintiff's responsibilities. Id.

Plaintiff filed a Charge of Discrimination against Tucker with the Equal Employment Opportunity Commission ("EEOC") on March 24, 2008. The EEOC issued Plaintiff a Notice of Right to Sue on December 15, 2008.

## **DISCUSSION**

A party is entitled to summary judgment if it can demonstrate "that there is no genuine issue as to any material fact and that

the movant is entitled to judgment as a matter of law." See Fed.R.Civ.P. 56(c). Once the movant has " 'show[n]' " or "point[ed] out...that there is an absence of evidence to support the nonmovant['s] case," the burden shifts to the nonmovant. See Celotex Corp. v. Catrett, 477 U.S. 317, 325-27 (1986). To discharge his burden, "a plaintiff must come forward with evidence to allow a reasonable jury to find in his favor" on each of the elements of his prima facie case. See Lizardo v. Denny's, Inc., 270 F.3d 94, 101 (2d Cir.2001).

The court must draw all factual inferences in favor of the party against whom summary judgment is sought and view the factual assertions in materials such as affidavits, exhibits, and depositions in the light most favorable to the nonmovant. See Anderson, 477 U.S. at 255; Celotex Corp., 477 U.S. at 322. However, a nonmovant benefits from such factual inferences "only if there is a 'genuine' dispute as to those facts." See Scott v. Harris, 550 U.S. 372, 127 S.Ct. 1769, 1776 (2007). The law is well established that "conclusory statements, conjecture, or speculation" are insufficient to defeat a motion for summary judgment. See Kulak v. City of New York, 88 F.3d 63, 71 (2d Cir.1996). The nonmovant cannot survive summary judgment simply by proffering "some metaphysical doubt as to the material facts," Matsushita Elec. Indus. Co. v. Zenith Radio Corp., 475 U.S. 574, 586 (1986), or presenting evidence that "is merely colorable, or is not

significantly probative." See Savino v. City of New York, 331 F.3d 63, 71 (2d Cir.2003) (quoting Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 249-50 (1986) (citation omitted)). Rather, he must "set out specific facts showing a genuine issue for trial." See Fed.R.Civ.P. 56(e)(2); See also D'Amico v. City of New York, 132 F.3d 145, 149 (2d Cir.1998) ("non-moving party may not rely on mere conclusory allegations nor speculation, but instead must offer some hard evidence showing that its version of...events is not wholly fanciful.").

**A.   ADEA Claim**

Plaintiff's ADEA claim is analyzed under the burden-shifting analysis set forth in McDonnell Douglas Corp. v. Green, 411 U.S. 792, 802 (1973). See also Reeves v. Sanderson Plumbing Prods., Inc., 530 U.S. 133, 146-149 (2000); St. Mary's Honor Ctr. v. Hicks, 509 U.S. 502, 506-511 (1993); Texas Dep't of Cmty. Affairs v. Burdine, 450 U.S. 248, 253-256 (1981). Under the McDonnell Douglas framework Plaintiff must first establish a prima facie case of age discriminatory by showing "(1) that he was within the protected [age] group, (2) that he was qualified for the position, (3) that he was discharged, and (4) that the discharge occurred under circumstances giving rise to an inference of [age] discrimination." Schnabel v. Abramson, 232 F.3d 83, 87 (2d Cir.2000) (internal quotation marks and citation omitted); see also McDonnell Douglas, 411 U.S. at 802. Once a plaintiff has established a prima facie

case of discrimination, the defendant must articulate a legitimate, nondiscriminatory rationale for its actions. See Burdine, 450 U.S. at 254. The burden then shifts to the plaintiff to demonstrate that the employer's stated rationale is merely a pretext for discrimination and that discriminatory animous is the true reason for the defendant's actions. See McDonnell-Douglas Corp., 411 U.S. at 802; see also St. Mary's Honor Ctr., 509 U.S. at 510-11; Reeves, 530 U.S. at 143. In this case, Plaintiff has established that he was within the protected age group (at least 40 years of age) and he was discharged on March 11, 2008. However, Plaintiff has not established that he was qualified for the production manager position or that the discharge occurred under circumstances giving rise to an inference of age discrimination.

In opposing Defendant's motion for summary judgment, Plaintiff has presented only his own conclusory statements that he was qualified for his position as production manager at Tucker.[1] Such conclusory statements are insufficient to create a material issue of fact to defeat a motion for summary judgment. See Kulak, 88 F.3d at 71. Similarly, the Backus affidavit is insufficient to create a

---

[1]Plaintiff submitted performance reviews for the years prior to 2005. See Docket #17-4. While these performance reviews indicate that Plaintiff was qualified to serve as lead pressman, as he had for 20 years, the reviews do not indicate that Plaintiff was qualified to serve as production manager, the position from which he was terminated. This Court notes that Plaintiff was promoted due to his skill and knowledge of the press machines and his tenure with the company. However, it is clear from the record that the skills required of a production manager were different than those required of a lead pressman.

material issue of fact as to Plaintiff's qualifications, as "Rule 56 requires a motion for summary judgment to be supported with affidavits based on personal knowledge, and a hearsay affidavit is not a substitute for the personal knowledge of a party." Sellers v. M.C. Floor Crafters, 842 F.2d 639, 643 (2d Cir. 1988) (internal citations omitted); See also Patterson v. County of Oneida, N.Y., 375 F.3d 206, 219 (2d Cir. 2004). Nearly all of the assertions in the Backus affidavit are hearsay and conclusory, and are not based on Mr. Backus's personal knowledge of Plaintiff's performance as production manager. Mr. Backus states that he did not believe that the production issues raised at the manager's meeting in late December 2007 were directed at Plaintiff. However, the issues raised by Reynolds directly relate to Plaintiff's responsibilities as production manager, including, *inter alia*, quality control, inventory control, shipping and temporary labor. Further, Plaintiff admits that he used profanity directed at his subordinates in the workplace. While he claims he was not sanctioned for such conduct, and James Backus asserts that the use of profanity was commonplace at Tucker, Plaintiff has not established that the use of profanity in the workplace could not disqualify him for the position of production manager.

Assuming that Plaintiff had shown that he was qualified for the position, which this Court finds that he has not, there is no evidence that Plaintiff's termination occurred under circumstances

giving rise to an inference of age discrimination. Plaintiff presents no credible evidence to rebut Defendant's evidence that Plaintiff's position was filled by an individual three years his senior. His claim that Tina Hui assumed some of his responsibilities is mere conjecture and is contradictory to Ms. Hui's own sworn statements that she merely rotated through Plaintiff's former department as a management trainee and that she did not assume any of his responsibilities. It is also worth noting that Reynolds promoted Plaintiff just a few months before he fired Plaintiff. It is difficult to imagine that Reynolds could have been acting with discriminatory animous in relation to Plaintiff's age, having just promoted him months earlier. See Grady v. Affiliated Cent., Inc., 130 F.3d 553, 560 (2d Cir. 1997).

Accordingly, this Court finds that Plaintiff has not established a prima facie case of age discrimination under the McDonnell Douglas framework, and therefore, his ADEA claim is dismissed with prejudice.

### B. Title VII and NYSHRL Retaliation Claims

Plaintiff's retaliation claims are also analyzed under the McDonnell Douglas burden-shifting framework. See McDonnell Douglass, 411 U.S. at 802.[2] Therefore, Plaintiff must first

---

[2] Claims brought under the New York Human Rights Law are analytically identical to claims brought under Title VII. Van Zant v. KLM Royal Dutch Airlines, 80 F.3d 708 (2nd Cir. 1996); See Haywood v. Heritage Christian Home, Inc., 977 F.Supp. 611, 613 (W.D.N.Y. 1997)(Larimer, C.J.)(Noting that both claims are governed by McDonnell Douglas standard.).

establish a prima facie case of discrimination by showing: (1) participation in a protected activity known to the Defendant; (2) an adverse employment action; and (3) a causal connection between the protected activity and adverse action. See Burlington Northern & Santa Fe Railway Co. v. White, 548 U.S. 53, 68 (2006); Holt v. KMI-Continental, 95 F.3d 123, 130 (2d Cir. 1996), cert. denied, 1997 WL 71191 (May 19, 1997); Tomka v. Seiler Corp., 66 F.3d 1295, 1308 (2d Cir. 1995) (citations omitted). Plaintiff in this case has not established a prima facie case for retaliation under Title VII or the NYSHRL and, therefore, Defendant's motion for summary judgment is granted with respect to Plaintiff's retaliation claims.

1. Plaintiff did not engage in a "protected activity"

Title VII prohibits retaliation against an employee who has engaged in a protected activity under the statute. 42 U.S.C. §2000e-3(a). A protected activity includes opposing or participating in, *inter alia*, an investigation or proceeding to oppose an employment practice made unlawful under Title VII. Id. An unlawful employment practice under Title VII includes " discharg[ing] any individual, or otherwise...discriminat[ing] against any individual with respect to his compensation, terms, conditions, or privileges of employment, because of such individual's race, color, religion, sex, or national origin." 42 U.S.C. 2000e-2(a)(1).

Plaintiff claims that he was terminated by Tucker after he complained to management in an interoffice memorandum of the conduct of a fellow employee, Moroni. The essence of Plaintiff's complaint to management was that Moroni harassed him and threatened his reputation. Plaintiff admitted in his deposition that he did not claim that he (or any other employee) was the victim of discrimination because of his gender or that he (or any other employee) was sexually harassed. Rather, Plaintiff complained that his reputation was at risk and that he was being harassed by a fellow employee. As such, there is no admissible evidence in the record suggesting that the plaintiff complained of unlawful discrimination on the basis of his sex (or any other discrimination made unlawful by Title VII) on this occasion. See Int'l Healthcare Exchange, Inc., v. Global Healthcare Exchange, LLC, 470 F.Supp.2d 345, 357 (S.D.N.Y.2007) (to be considered protected activity, the employee's complaint must put the employer on notice that discrimination prohibited by Title VII is occurring); See also Kelley v. Sun Microsystems, Inc., 520 F.Supp.2d 388, 403 (D.Conn., 2007)(to constitute protected activity, complaint must be directed to activity that is prohibited by Title VII).

This Court has previously held that a "plaintiff must complain of discrimination in sufficiently specific terms so that the employer is put on notice that the plaintiff believes he or she is being discriminated against on the basis of race, gender, national

origin, or any other characteristic protected by Title VII." See Brummel v. Webster Central School Distict, Transportation Department, 2009 WL 232789, *17-*18 (January 29, 2009)(citing International Healthcare Exchange, Inc., 470 F.Supp. 2d at 357). In the instant case, Plaintiff's complaint made to management, as explained by his deposition testimony, does not allege that he specifically was the victim of sexual discrimination (or that anyone else at Tucker was the victim of sexual discrimination). Plaintiff's complaint is only tangentially related to sexual discrimination, in that Moroni asked a female employee whether she felt that Plaintiff's actions were sexually harassing. However, the female employee responded that she did not feel sexually harassed, Tucker later determined that sexual harassment did not occur and Moroni apologized to Plaintiff for launching the inquiry. Further, Plaintiff admitted that he did not feel that he had been discriminated against because of his gender. See Pl. Dep. at 114-115. Therefore, Plaintiff's complaint could not have put Tucker on notice that Plaintiff was the victim of gender discrimination (or that any other person at Tucker was the victim of gender discrimination). See Brummel, 2009 WL 232789 at *16-*17 (citing Van Orden v. Wells Fargo Home Mortg., Inc., 443 F.Supp.2d 1051, 1064-65 (S.D.Iowa, 2006); Wynn v. Paragon Systems, Inc., 301 F.Supp.2d 1343, 1354 (S.D.Ga., 2004)(complaint that supervisor's behavior was disrespectful, harassing, and induced stress not a protected

activity where no claim was made that the supervisor was motivated by discrimination).

Plaintiff's reliance on Crawford v. Metropolitan Gov't of Nashville and Davidson County, 129 S.Ct. 846 (U.S. 2009) is misplaced. In Crawford, the Supreme Court held that Title VII's anti-retaliation clause protects an individual who comes forward with information regarding sexual harassment during a sexual discrimination investigation instigated by the complaint of a co-worker. Id. at 852. However, here, the Plaintiff did not complain that sexual harassment occurred at Tucker. Quite the opposite, his complaint memorialized the fact that sexual harassment did not occur at Tucker. The fact that Plaintiff complained to management about his co-worker's behavior does not constitute his opposing unlawful discrimination or participating in an investigation or proceeding to oppose unlawful discrimination. See Brummel 2009 WL 232789; See also Duckett v. Wal-Mart Stores, Inc., 2009 WL 995614 *8 (W.D.N.Y. April 14, 2009)(citing Broderick v. Donaldson, 437 F.3d 1226, 1232 (D.C.Cir.2006)(employee complaint that she suffered from embarrassing, humiliating and insulting treatment failed to establish that she engaged in protected activity where there was no allegation that the treatment was motivated by a discriminatory animus); Ochei v. Coler/Goldwater Memorial Hosp., 450 F.Supp.2d 275, 287 (S.D.N.Y.2006) (plaintiff's general complaints about her working conditions did not constitute engaging in a protected

activity where no claim was made that the supervisor was motivated by discrimination).

Plaintiff's reliance on Crawford v. Metropolitan Gov't of Nashville and Davidson County, 129 S.Ct. 846 (U.S. 2009) is misplaced. In Crawford, the Supreme Court held that Title VII's anti-retaliation clause protects an individual who comes forward with information regarding sexual harassment during a sexual discrimination investigation instigated by the complaint of a co-worker. Id. at 852. However, here, the Plaintiff did not complain that sexual harassment occurred at Tucker. Quite the opposite, his complaint memorialized the fact that sexual harassment did not occur at Tucker. The fact that Plaintiff complained to management about his co-worker's behavior does not constitute his opposing unlawful discrimination or participating in an investigation or proceeding to oppose unlawful discrimination. See Brummel 2009 WL 232789; See also Duckett v. Wal-Mart Stores, Inc., 2009 WL 995614 *8 (W.D.N.Y. April 14, 2009)(citing Broderick v. Donaldson, 437 F.3d 1226, 1232 (D.C.Cir.2006)(employee complaint that she suffered from embarrassing, humiliating and insulting treatment failed to establish that she engaged in protected activity where there was no allegation that the treatment was motivated by a discriminatory animus); Ochei v. Coler/Goldwater Memorial Hosp., 450 F.Supp.2d 275, 287 (S.D.N.Y.2006) (plaintiff's general complaints about her working conditions did not constitute engaging in a protected

activity where plaintiff did not allege that she was a victim of discrimination); McMillan v. Powell, 526 F.Supp.2d 51, 55 (D.D.Cir.2007)(employee's complaint's about supervisor's negative attitude towards her was not protected activity where complaints failed to allege that discrimination was the basis for supervisor's attitude); Holt v. Roadway Package Systems, Inc., 506 F.Supp.2d 194, 206 (W.D.N.Y.2007) 2009 WL 995614 *11 (employee's claim that supervisor was "out to get him" did not constitute protected activity as complaint did not allege discriminatory animus for supervisor's actions)). Accordingly, this Court finds that Plaintiff did not engage in a protected activity under Title VII or the NYSHRL.

> 2. Plaintiff has not established that the alleged "protected activity" and his discharge are causally connected

Even if Plaintiff could establish that he engaged in a protected activity, he failed to establish that his complaint and his discharge were causally connected. A plaintiff may establish causation in a Title VII retaliation action through proof that the alleged protected activity and adverse action occurred in close temporal proximity. See Duckett 2009 WL 995614 at *11 (citing Gordon v. New York City Bd. Of Ed., 232 F.3d 111, 115 (2d Cir. 2000). Plaintiff contends that his discharge is causally related to his complaint to management regarding Moroni because he was fired 16 days after the investigation into his complaint was closed. Defendant contends that his termination was not causally related to

Plaintiff's internal complaint, as Reynolds had noted Plaintiff's poor work performance since December 2007 and had counseled him on several occasions regarding his responsibilities as production manager and his use of profanity in the workplace. Defendant cites <u>Deebs v. Alstom Trans., Inc.</u>, for the proposition that an inference of causation does not arise where Plaintiff was subject to adverse employment actions prior to his engaging in a protected activity. 346 Fed. Appx. 654, 2009 WL 3004088 (2d Cir. 2009) (quoting <u>Slattery v. Swiss Reinsurance America Corp.</u>, 248 F.3d 87, 95 (2d Cir. 2001)("Where timing is the only basis for a claim of retaliation, and gradual adverse job actions began well before the plaintiff had ever engaged in any protected activity, an inference of retaliation does not arise.")).

This Court finds that the proximity of Plaintiff's discharge to the timing of his complaint to management does not lead to an inference of retaliation, as Plaintiff's job performance had been in question for at least 3 months prior to his termination. Additionally, this Court notes that Tucker investigated Plaintiff's complaint, determined that he did not violate the company's sexual harassment policy, and suggested that Moroni apologize to the Plaintiff.

3. <u>Defendant has stated a legitimate non-retaliatory reason for terminating plaintiff's employment</u>

As discussed above, Defendant contends that Plaintiff's employment was terminated because his performance as production manager was unsatisfactory and that he used profanity when speaking to his subordinates. Plaintiff contends that this explanation for his dismissal is pretextual. Plaintiff argues that he was an exemplary employee and that a fellow employee, James Backus, also believed Plaintiff to be an exemplary employee. As stated above, however, Plaintiff's self serving explanation of his employment qualifications is insufficient to meet his burden to show that Defendant's stated reason for dismissal was pre-textual and that Defendant's retaliatory animous was the true reason for his termination. <u>See</u> <u>Reeves v. Sanderson Plumbing Inc</u>., 530 U.S. 133, 146-7 (2000). Accordingly, this Court finds that Plaintiff has not established a prima facie case for retaliation and has not met its burden of proof under the <u>McDonnell Douglas</u> framework. Therefore, Defendant's motion for summary judgement is granted as to Plaintiff's claim for retaliation under Title VII and the NYSHRL.

## CONCLUSION

For the reasons set forth above, this Court grants Defendant's motion for summary judgement in its entirety. Plaintiff's Complaint is hereby dismissed with prejudice.

ALL OF THE ABOVE IS SO ORDERED.

                                      s/ Michael A. Telesca
                                          MICHAEL A. TELESCA
                                   United States District Judge

Dated:    Rochester, New York
             January 7, 2011